PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY, Appellant and Cross-Appellee,

v.

Emily Ruth Messer ROBERTSON and David L. Robertson, Appellees, and Ruth Dalton Messer, Appellee and Cross-Appellant.

No. 7628.

United States Court of Appeals Fourth Circuit.

Argued June 2, 1958.

Decided Oct. 6, 1958.

Welch Jordan, Greensboro, N. C. (Perry C. Henson, and Jordan, Wright & Henson, Greensboro, N. C., on brief), for appellant and cross-appellee.

Clyde C. Randolph, Jr., and Charles F. Vance, Jr., Winston-Salem, N. C. (Archie Elledge, and Irving E. Carlyle, Winston-Salem, N. C., on brief), for appelless and cross-appellant.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company seeks a declaratory judgment that it has no liability under an automobile insurance policy on a 1947 Dodge Coupé issued by it to Emily Messer Robertson on account of serious permanent injuries suffered by her mother, Ruth D. Messer, when the daughter was driving a Chevrolet car belonging to her husband, David L. Robertson, and it skidded and ran off the road and collided with a tree. The mother secured a judgment in a state court of North Carolina for $43,000 against her daughter for negligence and it is now claimed, and the District Judge held, that the Insurance Company is bound to pay on account of the judgment the sum of $25,000, the limit of its liability under the policy, because of provisions therein whereby coverage is extended to an automobile temporarily used by the insured as a substitute for the automobile described in the contract. Insuring agreement IV(3) of the policy is as follows:

> "Temporary Substitute Automobile—under coverages A, B and C, an automobile now owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

An additional contention of the policyholder is that the insurance company is liable under insuring agreement V of the policy relating to the use of other automobiles, which is as follows:

> "V. Use of Other Automobiles
>
> "If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions: * * *"

The accident happened on July 21, 1953. The mother's suit against the daughter was brought nearly three years later, on June 13, 1956. The Insurance Company was notified of the suit and offered to undertake the defense with the understanding that it did not waive any of its rights to claim non-coverage or forfeiture of the policy. Mrs. Robertson refused this offer and thereupon the company declined to defend the suit. No

answer was filed by Mrs. Robertson and a default judgment for $43,000 was entered against her on October 26, 1956. Meanwhile, the pending suit for a declaratory judgment was filed.

In order to determine whether the insured was covered by the provisions of agreement IV(3) of the policy in respect to a temporary substitute automobile, we first set out the circumstances which led her to make use of her husband's car on the date of the accident. Before her marriage Mrs. Robertson lived with her mother and was employed at Bassett, Virginia. She had been accustomed to drive her Dodge Coupé, the car described in the policy, to and from her place of employment. On June 27, 1953, she married David L. Robertson, who worked for a plumbing and heating contractor at Winston-Salem, North Carolina. He owned a 1951 Chevrolet automobile. After the marriage the couple went on a wedding trip and returned on Sunday, July 12, to the bride's home in Bassett. They planned for her to remain in Bassett until she could give her employer thirty days' notice and train her successor and that her husband should return to Winston-Salem and find a place where they could establish a home. Prior to the marriage Mrs. Robertson's car had been giving trouble due to overheating and excessive smoking of the exhaust and on the return from the wedding trip it was found that the battery was dead and the car could not be started. It was then arranged that Mr. Robertson should leave his car at Bassett for his wife's use during the following week and that he should take her car to Winston-Salem and repair it, after starting it with a hot shot battery. Although Mr. Robertson was not in the automobile business he had worked in a garage and had considerable mechanical skill.

This plan was not carried out. Mrs. Robertson used his car during the ensuing week just as she had used her own before her marriage. He drove her car to Winston-Salem on Sunday afternoon and experienced no difficulty on the way except the overheating of the water in the radiator. During the next two days he was able to correct the overheating of the car by making certain mechanical changes. He did not attempt to remedy the trouble with the exhaust, not having sufficient mechanical ability for this purpose, but he used the car throughout the week to drive to and from his work. Once or twice the car had to be pushed off because the battery was weak but the battery was gradually built up by the generator in driving and by the end of the week the car was in normal use.

It had been arranged by the couple that Mr. Robertson would return the car to his wife on Saturday, July 18, and resume the use of his own car, but the plan fell through because her father, who was a patient in the Veterans' Hospital at Hampton, Virginia, three hundred miles distant from Bassett, took a serious turn for the worse and his wife and daughter went to visit him. It was therefore agreed that the couple would continue to use each other's car until the following Saturday, July 25. Meanwhile, word was received that Mrs. Robertson's father was dying and on July 21, a second trip to the hospital was undertaken in the husband's car, during which the accident happened and the husband's car was destroyed. The injured women were taken to the hospital at South Boston, Virginia. Mr. Robertson was notified of the accident on the night of July 21, and immediately drove his wife's car from Winston-Salem to South Boston. During the trip the car operated satisfactorily and thereafter it was continuously and regularly used by the husband and wife until it was disposed of in the following November.

To establish coverage under agreement IV(3) of the policy there must be a temporary use by the insured of an automobile now owned by him in place of the car described in the policy, while it is "withdrawn from normal use because of its breakdown, repair service, loss or destruction."

Whether Mrs. Robertson's car was so withdrawn from normal use at the time of the accident is of course a question of

fact; and this fact is not open to doubt in this case. The evidence shows, and the District Judge found, [157 F.Supp. 408] that during the week of July 12, the husband built up the battery in his wife's car by using it and also corrected the overheating by removing the thermostat. "Indeed," said the judge, "he made all the necessary repairs and would have returned it [the car] to her on the weekend except for the intervening unforeseen circumstances above set forth." The accident to the car did not happen until the following Tuesday, July 21, and in the meantime the car was not withdrawn from normal use, as defined in the policy, but was being used daily by her husband in going to and from his work. It was also used by him in driving from Winston-Salem, North Carolina, to South Boston, Virginia, after he was notified of the accident.

It follows that the terms of agreement IV(3) of the policy were not met. The temporary use of the husband's car by the wife at the time of the accident was proved, but it was not shown that the use took place while her car was withdrawn from normal use because it was not usable or was being repaired. On the contrary, her car was actually being used by her husband at the time and the only reason it was not being used by her was because it was not convenient for her to do so. There is no substance in the contention of the insured that the Insurance Company is liable because the car was withdrawn from her normal use at the time of the accident. Clause IV(3) does not provide merely that the car be withdrawn from normal use, but that it be withdrawn for the specific reason of physical unfitness. We cannot omit that requirement or substitute for it the convenience of the policyholder.

The judge based his conclusion of liability on the decision of this court in American Employers' Insurance Co. v. Maryland Casualty Co., 4 Cir., 218 F.2d 335, in which a similar clause in the policy was given effect. In that case, however, it was clearly shown that the insured car was in such bad condition

that it was not capable of normal use. Indeed, it was in such a deplorable state that efforts to repair it up to the time of the accident to the substituted car had been unsuccessful, and the contention was earnestly pressed that it was not susceptible of normal use and had been given up or abandoned. The crucial question was not whether the insured car was withdrawn from normal use because of its condition, but whether it was nonexistent and therefore could not serve as a basis for a substitution.

It is well established not only by our decision in American Employers' Insurance Co. v. Maryland Casualty Co., supra, but also by the authorities generally that a vehicle is not being used as a temporary substitute automobile within the meaning of the provision of the policy under consideration unless the vehicle described in the policy is withdrawn from normal use on the date of the accident. Service Mutual Ins. Co. of Tex. v. Chambers, Tex.Civ.App., 1956, 289 S.W.2d 949; Erickson v. Genisot, 322 Mich. 303, 33 N.W.2d 803; Allstate Ins. Co. v. Roberts, 156 C.A.2d 755, 320 P.2d 90, 92; Iowa Mutual Ins. Co. v. Addy, 1955, 132 Colo. 202, 286 P.2d 622; State Farm Mut. Auto. Ins. Co. v. Bass, 1922, 192 Tenn. 558, 241 S.W.2d 568; Western Casualty & Surety Co. v. Norman, 5 Cir., 1952, 197 F.2d 67; 34 A. L.R.2d 936, 947–951; 5A Am.Jur. (Automobile Insurance), at page 85, § 87.

The insured also insists on the right to recover under insuring agreement V of the policy relating to the use of an automobile other than that described in the policy. Under its terms, if the automobile described in the policy is classified as "pleasure and business," the liability insurance afforded by the policy with respect to any other automobile used by the insured subject to the provision, inter alia, that the agreement does not apply to any automobile "furnished for regular use to the named insured." The District Judge did not find it necessary to pass on this question since he found for the insured under the provisions of insuring agreement IV above

considered. We hold under the evidence that the husband's car, which was not covered by an insurance policy, was furnished to his wife for her regular use. Her own testimony clearly demonstrates this fact. She testified explicitly that her use of her husband's car, during the ten-day period that it was in her possession, was exactly the same as her use of her own car before her marriage. It follows that the husband's car was not covered by the policy in suit at the time of the accident. We adhere to the view we expressed in Campbell v. Aetna Casualty & Surety Co., 4 Cir., 211 F.2d 732, where we quoted the following passage from the opinion of Judge Chesnut in Aler v. Travelers Indemnity Co., D.C.Md., 92 F.Supp. 620, 623:

> "This case involves the construction and application of the so-called 'drive other automobiles' clause of the present standard automobile liability policy. The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so. More specifically the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured. That this is the general purpose of the provision is well and clearly stated in the annotation on the subject in 173 A.L.R. 901. And see Lumbermens Mutual Cas. Co. v. Pulsifer, D.C.Me., 41 F.Supp. 249; Rodenkirk [for use of Deitenbach] v. State Farm Mut. Auto. Ins. Co., 325 Ill.App. 421, 60 N.E.2d 269."

See also Rodenkirk v. State Farm Mutual Automobile Ins. Co., 325 Ill.App. 421, 60 N.E.2d 269; Vern v. Merchants Mut. Cas. Co., Sup., 118 N.Y.S.2d 672; Wyatt v. Cimarron Ins. Co., 10 Cir., 235 F.2d 243; Farm Bureau Mutual Automobile Ins. Co. v. Marr, D.C.N.J., 128 F.Supp. 67.

The judgment of the District Court will be reversed and the case remanded with directions to enter judgment in favor of the Insurance Company declaring that it has no liability under its policy for the injuries suffered by Ruth Dalton Messer in the accident of July 21, 1953, while riding in the car of David L. Robertson.

Reversed and remanded.