RAMÓN RUIZ ET AL., Plaintiffs and Appellees, *v.* COMMERCIAL INSURANCE OF NEWARK ET AL., Defendants; THE AMERICAN INSURANCE CO., Intervener and Appellant.

No. 12374. Decided August 15, 1961.

*Héctor Lugo Bougal* for plaintiff Ramón Ruiz. *Rafael A. González* for defendants. *Córdova & González* and *Héctor Martínez Muñoz* for intervener.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On April 22, 1955, the Ponce Part of the Superior Court rendered judgment in civil case No. C.S.–53–1737, and, among other pronouncements, it ordered Ramón Ruiz and its insurer Commercial Insurance Company of Newark, New Jersey, to pay the sum of $1,351.73 to The American Insurance Company of Newark, New Jersey. The insurer paid

$391.73, thereby complying with its liability under the terms of a public-liability policy which it had issued in favor of Ruiz with a coverage of $1,000.[1] The sum of $960 remained unpaid.

Thereafter Ruiz brought an action under No. C.S.–56–736 of the same court against Commercial Insurance Company, claiming damages caused to his automobile, under the risk covered by policy No. 62–11203–H. As a matter of fact, this policy had been issued by Commercial and another company belonging to the same group, Pacific National Fire Insurance Co., assuming proportionately the risks covered, so that Commercial assumed the risk of the damages caused by Ruiz while operating the insured vehicle—public liability—and Pacific assumed the risk for the damages that might be caused to the said vehicle—collision.

██ In order to secure by judgment the payment of the balance of the credit amounting to $960 and interest thereon, American obtained an order in case C.S.–53–1737, directed to Ramón Ruiz and his insurer Pacific, to withhold the said amount [2] out of any sum which the latter would be bound to

---

[1] The balance of $608.27 was paid to the other plaintiff, Fernando Barnés, for the damages caused to his vehicle. The court assessed the total damages at $1,960, but the American paid $1,351.73 to Barnés under a collision policy which it had issued in favor of the latter. It therefore subrogated itself in the cause of action up to that amount.

[2] The order to secure effectiveness, copied verbatim, reads as follows:

"Having examined the motion of American Insurance Co. of Newark, New Jersey, requesting an order to secure the effectiveness of the judgment entered in this case on April 22, 1956 [sic] against Ramón Ruiz, up to the sum of $960 plus $85 for legal interest thereon, and having examined the said judgment, which is final and conclusive, the court hereby consents and decrees the effectiveness of the judgment rendered in favor of American Insurance Co. of Newark, New Jersey, on any right, title, or interest which Ramón Ruiz has or may have in policy No. 62-11203 issued by 'Pacific Fire Insurance Co.,' represented by 'Insular Underwriters Corp.,' up to the sum of $960 plus $85 for legal interest thereon, without having to give bond as such obligation appears on an authentic document.

"It is ordered that 'Insular Underwriters Corp.,' its agents, or officers *withhold* in their possession any sum of money up to the aforesaid amount."

pay to the former under the terms of policy No. 62–11203–H. This order was duly served on Pacific and Ruiz.[3] As we have seen, Ruiz did not join the Pacific as a defendant, which was the company which had assumed the risk of collision under the insurance contract, but through inadvertence directed his action against Commercial. However, Ruiz and Commercial agreed on a stipulation that judgment be rendered for the sum of $2,900. On December 11, 1956, the court, pursuant to the terms of the stipulation, rendered judgment in favor of Ruiz for the aforesaid sum. The same day judgment was rendered, one of the attorneys for Commercial, who was also attorney for Pacific, because both companies belonged to the same group of insurers and had in Puerto

The parties refer to this order as a writ of attachment. It is not, in fact, a writ of attachment, because the creditor did not take possession of the property, but rather a garnishment. Although at the time the events occurred there was not a statute specifically authorizing garnishment, this Court had sanctioned it on previous occasions. *Prado* v. *Quiñones*, 78 P.R.R. 300 (1955); *Arraiza* v. *Reyes*, 70 P.R.R. 583 (1949); *Sierra* v. *Vieta*, 56 P.R.R. 214 (1940); cf. *Water Resources Authority* v. *Irizarry*, 72 P.R.R. 601 (1951); *Rodríguez* v. *Fontes*, 51 P.R.R. 648 (1937); *Diego Agüeros & Co.* v. *Heres*, 50 P.R.R. 511 (1936); *Bernardini* v. *Peña*, 46 P.R.R. 380 (1934); *U.S. Fire Ins. Co.* v. *District Court*, 43 P.R.R. 186 (1932); *M. Lamadrid & Co.* v. *Guerrero*, 43 P.R.R. 951 (1932); *F. L. de Hostos & Co.* v. *Madera*, 43 P.R.R. 591 (1932). Rule 56.1 of the Rules of Civil Procedure of 1958 (32 L.P.R.A., Supp., R. 56.1), dealing with temporary remedies, refers specifically to the attachment of funds in the hands of a third party as one of the temporary orders which the court may make to secure the effectiveness of the judgment.

[3] The writ served on Pacific was confined to copying the order to secure effectiveness, but the writ served on Ruiz reads as follows:

"YOU ARE HEREBY NOTIFIED that in compliance with a writ of attachment issued by the Hon. Superior Court of Puerto Rico, Ponce Part, and in order to secure the effectiveness of the judgment entered in this case on April 22, 1956 [sic] the following has been attached as your property:

'Any right, title, or interest which you have or may have in policy No. 62-11203 issued by "Pacific Fire Insurance Co.," represented by Insular Underwriters Corp., up to the sum of $960 plus $85 for legal interest on this sum.'

"YOU ARE WARNED that you can not sell or alienate or assign any right or interest which you may have in the said policy, and that if you do so the presumption will be that such alienation or assignment is fraudulent for all legal purposes, and also that all persons responsible therefor may be punished for contempt."

Rico the same agent—Insular Underwriters Corporation—informed by telephone one of the attorneys for American that he proposed to deposit the amount of the judgment in the office of the clerk of the court. He also notified by telegraph the other attorney for American, who had offices in Ponce. The attorney for Commercial and Pacific prepared a motion on December 11, which he sent by mail to the office of the clerk of the Superior Court, Ponce Part, in which he made reference to the writ of garnishment which had been served on him and to the notice which he had given to the attorneys of American of his intention to deposit in the office of the clerk the amount of the judgment. In that motion he moved the court "to admit the check which he had deposited in the office of the clerk together with this motion [4] in full payment of the amount of the settlement in this case." It appears that this motion was received and filed at 4:20 p.m. of December 12. On that same day of December 12, evidently before the motion for deposit was filed, Ruiz's attorney filed a motion for deposit and withdrawal of funds in which he set forth that *"the defendant has delivered* to the plaintiff a check for the said sum of $2,900, in payment of the judgment, but the check was made payable to the order of the Clerk of this Court," and requested that the check be received and that another be issued in its stead to the order of the plaintiff for the aforesaid amount. It was so ordered. In this way Ruiz withdrew *the full amount* of the judgment, thereby ignoring the rights which American might have secured by virtue of the writ of garnishment which had been legally served, *Armour Fertilizer* v. *Ramírez,* 52 P.R.R. 521 (1938), particularly where there is no controversy as to the fact that,

---

[4] The check referred to was not attached to the motion, but was delivered to Ruiz's attorney. The attorney for Commercial stated that ". . . that same day the plaintiff followed me to the plane and wanted his check" (Tr. Ev. 4), and prior thereto he had said that ". . . he (Ruiz's attorney) refused to compromise if that sum was going to be attached."

although the deposit was made by Commercial, the funds belonged to Pacific, which was the only one liable for the payment of the judgment pursuant to the insurance policy.

As we have already said, Commercial filed a motion in case C.S.–56–736 to accept the $2,900 check in full payment of the judgment. In the meantime, American filed a motion in case C.S.–53–1737, within which it had obtained an order to secure the effectiveness, summoning Pacific to show cause why it should not be held liable for the payment of the sum which it was ordered to withhold. Both motions were heard jointly. On the day set for the hearing, Pacific appeared and alleged that it had been relieved from responsibility from the moment it notified the attorneys for American that it proposed to deposit the full amount of the judgment. It assumes the same position before this Court upon stating in its brief that "there is no doubt that the attachment levied by American Insurance Company was a valid attachment, but the latter, through its attorneys, learned that an error had been committed when the Commercial Insurance Company answered the complaint filed by Ramón Ruiz, and that it was notified in time that the sum stipulated by the parties was going to be deposited and finally that it was deposited in the office of the clerk of the Superior Court of Ponce. The appellant (American) had an opportunity to intervene promptly in the case, but failed to do so." The trial court held that Pacific "complied with the order of the court by depositing the full amount of the judgment rendered on December 11, 1956, and that it was not liable to the appearing party herein (American) because the latter had not been paid the sum due to it." Appeal was taken from this judgment.

Reversal is in order.

A brief examination of the order to secure effectiveness directed to Pacific shows that it was expressly required, through its agent, to withhold the amount due Amer-

ican. Since there was no contingency or condition on the existence of liability on the part of Pacific under the policy, and the controversy was confined to the measure of damages, no objection could be interposed to the enforcement of the writ of garnishment. *General Acc. Fire & Life Assur., Corp.* v. *Mitchell,* 259 P.2d 862 (Colo. 1953); *Rodenkirk* v. *State Farm Mutual Automobile Ins. Co.,* 60 N.E.2d 269 (Ill. 1945); *Allor* v. *Dubay,* 26 N.W.2d 772 (Mich. 1947); *cf. Water Resources Authority* v. *Irizarry, supra; Garnishment—Provisions in Insurance Policies Prohibiting Assignments,* 6 Rutgers L. Rev. 619 (1952). It is clear that it obtains no relief from this obligation merely by depositing in the office of the clerk of the court *the full amount* of the judgment and notifying this fact to the attorneys for American. The general rule on this matter is that the creditor who attaches property of his debtor in the hands of a garnishee subrogates himself to the rights of the latter. *In re Boyd's Estate,* 146 A.2d 816 (Pa. 1958); *Krepsky* v. *Rothman,* 152 N.E.2d 597 (Ill. 1958); *Maybeno* v. *Battaglia,* 26 So.2d 315 (La. 1946). If the intention was that the deposit of the full amount of the judgment would relieve it from liability, at least it should have attached the check to the motion which it filed bringing to the court's attention the existence of the order of effectiveness decreed in order to prevent that the rights of American would be violated when providing for the withdrawal of funds. In other words, when tendering payment care should be exercised that the rights of the person in whose favor the garnishment was ordered be protected. *Cf. Portland Ass'n of Credit Men* v. *Earley,* 254 P.2d 758, 762–63 (Wash. 1953); *Gainville Feed & Poultry Co.* v. *Waters,* 73 S.E.2d 771 (Ga. 1952); Note 13, Notre Dame Law. 328 (1938). Apparently, this was its intention, but it did not do so, and, for reasons unknown to us, it elected to deliver the check to plaintiff Ruiz, who acted promptly in order to avoid that the court, upon learning of

the writ of garnishment, should refuse to consent to the withdrawal of the full amount of the funds. The conduct observed by Ruiz in requesting the delivery of the full amount of the funds, having knowledge of the writ of garnishment issued, deserves our most energetic reprobation. The circumstances surrounding this entire incident point to the fact that it was deliberately sought to prevent American from collecting what was legally due to it. It is no excuse at all that the action was brought against Commercial and not against Pacific, as it is insinuated in the letter signed by Ruiz's attorney, addressed to one of the attorneys for both companies.[5] This letter reveals, if anything at all, the full knowledge that both had, the insured and his company, of the whole situation.

*Rocafort* v. *Cantero*, 31 P.R.R. 484 (1923), cited by the trial court in support of its decision, does not apply. It does not have the scope sought of authorizing the deposit of a certain amount which is subject to effectiveness of judgment, ignoring the rights of the party which obtained the order. It merely suggests that the timely deposit relieves from the payment of interest.

In view of the facts stated above, we hold that Pacific is not exempt from compliance with the terms of the order to secure effectiveness of August 28, 1956, entered in civil case C.S.–53–1737, and that, therefore, it is liable to American for the sum of $960 and interest thereon, without prejudice

---

[5] The said letter, copied verbatim, reads as follows:

"I received today the writ of attachment in the matter mentioned in the above-entitled case. From this writ I learn that the order of the court is directed to 'Pacific Fire Insurance Company, its agents, or officers.' Since our case is directed against Commercial Insurance Company, I believe that you will have no responsibility in the event a compromise is made in the above-entitled case under our consideration, since, briefly, there is no order directed to Commercial Insurance Company.

"In view of the situation described, I would appreciate your taking steps to close this matter definitively. If this is not possible, I urge you to obtain an answer to the complaint in order that we may proceed with the case, for my client is interested in expediting the same."

to any action which it may have against Ruiz to recover from the latter the said sum which was unduly withdrawn by him.

Judgment will be entered reversing the order appealed from and remanding the case for further proceedings not inconsistent with this opinion, and, further, the appellee is ordered to pay the sum of $500 for attorneys's fees.