FIDELITY & CASUALTY COMPANY OF
NEW YORK, a corporation,
Plaintiff,

v.

Charley R. JOHNSON et al.,
Defendants.

Civ. No. 1117.

United States District Court
D. Minnesota, Sixth Division.

Oct. 25, 1955.

A. R. Johanson, Wheaton, Minn., for plaintiff.

Gerald S. Rufer, Fergus Falls, Minn., for defendants.

DEVITT, District Judge.

This is an action under the Declaratory Judgments Act, Title 28 U.S.C.A. § 2201, to determine the liability of the plaintiff insurance company upon a policy of insurance issued to the defendant Charley R. Johnson on a certain Kaiser automobile.

The policy contained a standard "use of other automobiles" clause which extended the policy coverage to other automobiles used by the insured with the exception that it would not apply—

"To any automobile owned by, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household * * * "

Two factual issues were presented at the time of trial. The first was whether or not the title to a 1938 Ford automobile, which was being driven by the insured's wife at the time of the fatal accident, was in the name of Charley R. Johnson, the father, or Alvin L. John-

son, the son at the time. From the bench the Court stated its opinion that at the time of the accident, on May 13, 1952, title to the car was in Alvin L. Johnson. The Court is of the same view now.

The second issue for decision is whether or not this Ford car was "furnished for regular use" to Charley R. Johnson or his wife, Selma. I have considered the evidence and read the briefs of the facts and pertinent law submitted by both parties and have come to the conclusion that the Ford car was "furnished for regular use" to Charley R. Johnson and his wife, Selma, and that the plaintiff insurance company is not liable by virtue of this exclusion in its insurance policy.

I am prompted to reach this conclusion principally from the testimony of Charley R. Johnson himself. In his deposition on file, on page 30, the following colloquy took place between plaintiff's attorney, Mr. Rufer, and Mr. Johnson after a discussion about the purchase price of the car being a dollar and a roll of snuff:

"Q. The reason it made a difference between you was because you could still use the car together? A. (Mr. Johnson) When available.

"Q. That was the reason for selling it for that price? A. Yes.

"Q. And when you say you could use the car together, you had in mind that on occasions your wife could use it as well as you, whatever you as a family needed? A. As a family whenever it was around.

"Q. You and Mrs. Selma Johnson and your son could use the car more or less interchangeably? A. Yes.

"Q. That was what you had in mind when you fixed this price at $1 and a roll of snuff? A. I suppose it was."

The court reporter has made a transcript of the testimony of Mr. Johnson on the stand dealing with this same subject, and it is substantially the same as that quoted above. This additional exchange between Mr. Rufer and Mr. Johnson took place on the stand:

"Q. That's what really happened, wasn't it, that you all used it together? A. We both drove it or all three of us drove it once in a great while.

"Q. Well, whether or not you had any understanding in advance that you were all going to use the car together, that's the way it did work out, wasn't it, Mr. Johnson? A. During the last three or four weeks before the accident when we were seeding it did.

"Q. During the last three or four weeks before the accident, that's what it had come down to, hadn't it? A. More or less.

\* \* \* \* \*

"Q. So during the last three or four weeks before the accident occurred that was when you were all using the car regularly between you? A. I wouldn't say regularly.

"Q. Well, you were all using it interchangeably, you and your wife and Bud or Alvin? A. The car could stand there for several days without being touched.

"Q. And then it was just as apt to be your wife or you or your son that would take the car, isn't that right? A. Well, it could be."

I interpret this testimony as reflecting an agreement between Charley Johnson and his son, Alvin, to the effect that the Ford car would be sold for a very nominal price with the understanding that the Charley Johnsons could continue to use it with Alvin Johnson. Although the car was used almost exclusively by Alvin Johnson in the winter time in connection with his plumbing business, it was located on the Charley Johnson farm much of the time especially during the seeding season in the spring, and was used by Charley Johnson to about the same extent and in the same manner as when he owned it, and on 5 or 6 occasions it was

used by Selma Johnson. She drove the Ford car exclusively because she did not know how to operate the Kaiser car.

It is possible that Charley Johnson sold his car to his son, Alvin, for the nominal price of one dollar and a roll of snuff because he wanted to make a partial gift to his son as is urged by the defendants; but it is more probable, in view of the fact he needed a second car at least part of the time, and hence did not trade in the old Ford when he purchased the 1951 Kaiser, that the nominal sale price was fixed as part of an arrangement whereby the Charley Johnsons could continue to use the Ford car with Alvin. The practice which prevailed after the sale substantiates this view.

I interpret this as being "furnished for regular use" within the meaning of that expression as used by the contracting parties in the insurance policy.

The plaintiff may prepare appropriate findings of fact, conclusions of law, order for judgment and form of judgment.